IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GARY M. NEWTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-610-SMD |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

Plaintiff Gary M. Newton ("Newton") applied for a period of disability and disability insurance benefits ("DIB") on May 7, 2019, alleging he became disabled on April 22, 2019. Tr. 250-51. Newton's application was denied at the initial administrative level. Tr. 139-44, 148-49. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on December 14, 2020, that Newton was not disabled. Tr. 7-25. Newton appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-6. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Newton appeals under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's decision.[1]

**I.    STATUTORY FRAMEWORK**

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 21); Def.'s Consent (Doc. 20).

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238.

---

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

2

If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy he can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

### III.   ADMINISTRATIVE PROCEEDINGS

Newton was 36 years old on his alleged disability onset date. Tr. 250. He graduated high school and has past relevant work experience as a twisting machine tender and a carpet machine fixer. Tr. 117, 266-67. Newton alleged disability due to physical impairments, diabetes, gout, degenerative disc diseases with low back pain, leg weakness, right knee pain, and radiculopathy. Tr. 265.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Newton's disability determination. At step one, the ALJ found Newton has not engaged in substantial gainful activity since his alleged onset date. Tr. 12. At step two, the ALJ found Newton suffers from the following severe impairments: degenerative disc disease; osteoarthritis of the right knee; carpal tunnel syndrome; diabetes mellitus; gout; and obesity. Tr. 12. At step three, the ALJ found Newton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 13.

The ALJ proceeded to determine Newton's RFC, finding he has the capacity to perform sedentary work with some significant additional postural and environmental limitations. Tr. 15. At step four, the ALJ found Newton unable to perform any past relevant

4

work. Tr. 19. At step five, the ALJ considered Newton's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that Newton can perform. Tr. 19. Accordingly, the ALJ found Newton was not disabled from April 22, 2019, through the decision date. Tr. 20.

IV. **NEWTON'S ARGUMENTS**

Newton presents four issues for review:

(1) Whether the ALJ erroneously rejected the opinions of a treating primary care physician and a treating neurologist.

(2) Whether the ALJ failed to fulfill his responsibilities in analyzing the impact of Newton's obesity pursuant to SSR 19-2p.

(3) Whether the ALJ erroneously failed to consider the combined impact of Newton's impairments.

(4) Whether the ALJ erred in failing to consider the erosion of the unskilled sedentary occupational base.

Pl.'s Br. (Doc. 12) at 1. As explained below, the undersigned finds that the ALJ did not commit reversible legal error.

V. **ANALYSIS**

    1. **Whether the ALJ erroneously rejected the opinions of Newton's treating primary care physician and treating neurologist.**[5]

---

[5] The Social Security Administration revised its regulations regarding the consideration of medical evidence, applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Newton filed his claim on May 7, 2019, (Tr. 250-51), so the revised regulations apply here. *See* 20 C.F.R. § 404.1520c. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). Accordingly, although Newton refers to his medical sources as treating physicians, the Court will not.

In evaluating the persuasiveness of a medical source's opinion, an ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). These factors are applied "when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). Importantly, then, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency are the "most important" factors considered by the ALJ. 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. As such, the ALJ must articulate how these factors were considered in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency.). The ALJ may—but is not required to—explain how he considered the other remaining factors. *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)(2)).

### a. Dr. Stanley Barnes

Dr. Stanley Barnes—Newton's primary care physician—opined in a Medical Source Statement ("MSS") that Newton could occasionally lift and carry up to 10 pounds;

6

sit for 30-60 minutes without interruption for 2 hours in an 8-hour workday; and stand and walk for 30-60 minutes without interruption for 1 hour in an 8-hour workday. Tr. 394-400. Dr. Barnes further opined that, during the rest of the workday, Newton should sit with his legs elevated and alternate positions regularly. Tr. 397. Later, in a letter summarizing his treatment of Newton, Dr. Barnes opined that Newton could only sit and walk 5-10 minutes before needing to rest or change positions. Tr. 417.

The ALJ accurately summarized Dr. Barnes's opinions and found them unpersuasive. Tr. 18. In so doing, the ALJ reasoned that while Dr. Barnes's opinions were supported by examinations of Newton, they were too limiting "based on the totality of the record"; were "clearly based on subjective reporting"; and were "temporary in nature and job specific." Tr. 18. The ALJ also reasoned that Newton's "generally normal physical examinations including normal unassisted gait" undermined Dr. Barnes's opinions regarding Newton's limitations. Tr. 18.

Newton argues that the ALJ's reasoning for finding Dr. Barnes's opinion unpersuasive is flawed for three reasons, none of which are persuasive. First, Newton contends that the ALJ failed to explicitly identify the evidence he refers to as the "totality" of the record and that the "totality" of the record actually supports Dr. Barnes's opinions. Pl.'s Br. (Doc. 12) p. 8. Notably, Newton cites no case law requiring the ALJ to specifically identify the pieces of evidence within the record that comprise its "totality." Of course, this is not surprising because such a requirement would be impractical if not impossible for an ALJ to meet. Thus, the undersigned finds that the ALJ's failure to identify specific pieces of evidence comprising the "totality" of the record is not legal error. And as for Newton's

7

argument that the totality of the record actually supports Dr. Barnes's opinions, the argument simply invites the Court to reweigh the evidence before the ALJ, which it cannot do. *Phillips*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].").

Second, Newton argues that the ALJ erred by reasoning that Dr. Barnes's opinions were unpersuasive because they were based on Newton's subjective reports. Pl.'s Br. (Doc. 12) p. 8. In support of this argument, Newton points to Dr. Barnes's treatment records and other medical evidence that he believes support the limitations prescribed by Dr. Barnes. *Id.* at 8-9. Newton's argument is simply another invitation for the Court to reweigh the evidence. Indeed, the ALJ explicitly acknowledged that Dr. Barnes's opinions were "*supported by examinations* of [Newton]" but found them too limiting based, *inter alia*, on Newton's subjective reports. Tr. 18 (emphasis added). Newton cites no law prohibiting the ALJ from considering whether a claimant's subjective reports may lead a medical source to prescribe more intense limitations than are supported by other record evidence, and the undersigned knows of none. As such, the undersigned finds that the ALJ did not err in finding Dr. Barnes's opinions unpersuasive because they were based—in part (and not solely)—on Newton's subjective reports.

Third, to the extent Newton argues that the ALJ's rejection of Dr. Barnes's opinions was contrary to the evidence, the argument is not persuasive. While Newton draws the Court's attention to evidence he believes supports Dr. Barnes's opinions, there is other evidence in the record, which was cited by the ALJ, that undermines Dr. Barnes's opinion.

*See* Tr. 18. Again, the undersigned will not reweigh the evidence as Newton invites the Court to do.

For these reasons, the undersigned finds that the ALJ did not commit legal error in evaluating Dr. Barnes's opinions and substantial evidence supports the ALJ's determination that Dr. Barnes's opinions were unpersuasive.

### b.  Dr. Sadik Yesil

Dr. Sadik Yesil, Newton's neurologist, opined in a MSS that Newton could occasionally lift and carry up to 10 pounds; could sit, stand, and walk for 60 minutes at a time without interruption for two hours; and could sit, stand, and walk for 60 minutes at a time for a total of 2 hours in an 8-hour workday. Tr. 387-393. Dr. Yesil further opined that Newton would need to switch positions from sitting, standing, and walking whenever discomfort occurs, and that he could not walk more than 50 feet without a cane. Tr. 389.

The ALJ accurately summarized the opinion of Dr. Yesil and found it "somewhat persuasive." Tr. 17. Specifically, the ALJ concluded that Dr. Yesil's opinion "is supported by an examination of the claimant but the limitations in the [RFC] are too extreme based on the totality of the record, are internally inconsistent as Dr. Yesil reported that the limitations were in existence since 2015, but [Newton] worked until 2019, and are inconsistent with" evidence in the record. Tr. 17.

Newton argues that the ALJ's reasoning for finding Dr. Yesil's opinion "somewhat persuasive" is flawed for two reasons, neither of which are persuasive. Pl.'s Br. (Doc. 12) pp. 9-11. First, Newton argues that the ALJ erred because "the ALJ again pointed to the 'totality of the record[]' as the basis for not affording a treating source's opinion more

9

weight without evidentiary support." Pl.'s Br. (Doc. 12) pp. 9-10. For the reasons explained in the previous section addressing the ALJ's treatment of Dr. Barnes's opinions, this argument is not persuasive.

Second, Newton contends that the ALJ erred in reasoning that Dr. Yesil's opinion was internally inconsistent because Dr. Yesil opined that Newton had experienced the limitations since 2015, which is four years prior to his alleged onset date and during a timeframe when Newton was employed. *Id.* at 10. Newton surmises that Dr. Yesil's imposed timeframe "is of little, if any, importance" and "may have been an error." *Id.* n. 14. However, Newton provides no support for his hypothesis that Dr. Yesil simply erred in ascribing when Newton's limitations began, and the undersigned declines to speculate that such an error exists. Certainly, without a showing of error, it was reasonable for the ALJ to find Dr. Yesil's opinion unpersuasive as to the degree of limitations he prescribed when Newton maintained employment during the period of time Dr. Yesil found him to be limited.

For these reasons, the undersigned finds that the ALJ did not commit legal error in evaluating Dr. Yesil's opinion and further finds that substantial evidence supports the ALJ's determination that Dr. Yesil's opinion was "somewhat persuasive."

### 2. Whether the ALJ failed to fulfill his responsibilities in analyzing the impact of Newton's obesity pursuant to SSR 19-2p.[6]

---

[6] SSR 19-2p applies to "applications filed on or after [May 20, 2019,] and to claims that are pending on and after [May 20, 2019.]" SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019). Newton's claims remained pending on May 20, 2019, as the ALJ did not issue his decision until December 14, 2020. Tr. 21. Accordingly, SSR 19-2p applies here.

Newton argues that the ALJ failed to comply with SSR 19-2p because he did not explain how, and in what ways, Newton's extreme obesity further limited his ability to perform sustained competitive work. Pl.'s Br. (Doc. 12) pp. 11-12. SSR 19-2p requires the ALJ to consider "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).

At step two, the ALJ found that Newton's obesity was a severe impairment. Tr. 12. At step three, the ALJ considered Newton's obesity, noting that it may have an adverse impact on co-existing impairments. Tr. 16. Specifically, the ALJ acknowledged that someone with obesity and Newton's other conditions may have more pain and limitations than what might be expected by the conditions alone. Tr. 16. He also acknowledged that obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an 8-hour workday. Tr. 16. The ALJ further stated that "[a]ll of these considerations have been taken into account in reaching" Newton's RFC. Tr. 16.

The undersigned finds that the ALJ did not commit legal error in his application of SSR 19-2p. The ALJ explicitly acknowledged Newton's obesity and noted how obesity could exacerbate co-existing impairments. Tr. 16. Thus, he precluded Newton from climbing ladders, ropes, or scaffolds, and limited him to only occasional stooping, kneeling, crouching, and crawling. Tr. 14. Newton does not point to any medical evidence showing that his obesity further prevents him from performing sedentary work. Thus, the undersigned finds that substantial evidence supports the ALJ's application of SSR 19-2p. *See Combs v. Comm'r, Soc. Sec. Admin*, 2022 WL 875021, at *9 (N.D. Ala. Mar. 23, 2022)

(finding that substantial evidence supported the ALJ's application of SSR 19-2p where the ALJ "precluded [the claimant] from climbing ladders, ropes, or scaffolds, and limited him to only occasional stooping, kneeling, crouching, and crawling"); *Anderson v. Kijakazi*, 2021 WL 4146300, at *7 (M.D. Fla. Sept. 13, 2021) ("A review of the record establishes that the ALJ properly considered Plaintiff's obesity . . . [in holding] that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and crawl.").

### 3. Whether the ALJ erroneously failed to consider the combined impact of Newton's impairments.

Newton argues that "[t]here is no evidence that the ALJ considered the combined impact of [ ] Newton's multiple chronic musculoskeletal impairments, DM-II, [d]iabetic polyneuropathy, [g]out[,] and [c]arpal tunnel syndrome in formulating the RFC." Pl.'s Br. (Doc. 12) p. 12. Newton contends that the ALJ "failed to provide even a general statement that he had considered the combined impact of [ ] Newton's impairments." *Id.* Specifically, Newton argues that the ALJ failed: (1) to properly assess his reading ability; (2) to address the individual symptoms associated with his impairments—i.e., that he has disrupted sleep and experiences irritability, depression, and anxiety; and (3) to consider that his medications cause side effects of dizziness, tiredness, insomnia, and muscle weakness. *Id.* at 12-13. Newton contends that had these symptoms/impairments been considered, he would have been found disabled. *Id.* at 14.

Newton's argument that the ALJ failed to provide a general statement that he considered the combination of his impairments fails. At step three, the ALJ found that

Newton did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 13. In reaching this conclusion, the ALJ examined Newton's degenerative disc disease, osteoarthritis of the right knee, carpal tunnel syndrome, gout, diabetes mellitus, and obesity. Tr. 13-14. Then, at step four, after considering Newton's allegations, medications, medical evidence, activities of daily living, and opinion evidence, the ALJ found that Newton has the RFC to perform sedentary work with additional limitations, including a limited ability to read. Tr. 14. The ALJ's statement that Newton did not have an impairment or *combination of impairments* that established disability, coupled with his thorough discussion of Newton's impairments during the RFC determination, is sufficient to conclude that the ALJ generally considered the combined effects of Newton's impairments. *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (holding that the ALJ's explicit statement that the claimant did not suffer from a combination of impairments rendering him disabled, coupled with an "exhaustive consideration" of the claimant's impairments in formulating the RFC at step four was sufficient to satisfy the ALJ's duty to make specific and well-articulated findings as to the effect of the combination of impairments).

Newton's specific arguments regarding the ALJ's failure to address certain symptoms and impairments fare no better. As for his argument that the ALJ improperly determined his reading proficiency, Newton contends that the ALJ should have found him illiterate instead of "limited" in his reading ability. Pl.'s Br. (Doc. 12) pp. 12-13. In support of his argument, he points to his testimony that he could not perform "the least physically-demanding job that [he could] think of" because "probably pretty much the not knowing

13

how to read." Tr. 110. He also notes that he obtained a special education diploma and reads at a third-grade level. Tr. 91-93, 266. Finally, he claims that he is unable to read written instructions and therefore his wife fills out forms and handles financial matters. Tr. 93, 265, 277-94, 391.

Under the Regulations, illiteracy is defined as "the inability to read or write." 20 C.F.R. §§ 404.1564(a), 416.964(a). An individual is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* "Generally, an individual's educational level is a reliable indicator of the individual's ability to read and write a simple message." SSR 20-01p. "Most individuals learn to read and write at least a simple message by the time they complete fourth grade[.]" *Id.* Thus, a claimant's formal education level is used "as the starting point to determine whether the individual is illiterate." *Id.* Importantly, however, the numerical grade level a claimant has completed in school "may not represent [his] actual educational abilities," which may be higher or lower based on other evidence. 20 C.F.R. § 404.1564(b).

Substantial evidence supports the ALJ's determination that Newton has limited reading ability and is not illiterate, as he now claims. Notably, at the hearing before the ALJ, Newton's attorney informed the ALJ that Newton "has an occupational diploma from high school" and has "*a limited reading and writing level*." Tr. 91 (emphasis added). Newton himself testified that he "graduated with a third-grade reading level." Tr. 93. Further, Newton reported to a consultative examiner that he had no restrictions in reading,

speaking, or writing.[7] Tr. 17, 382. This is substantial evidence supporting the ALJ's conclusion that Newton is limited in his reading ability but not illiterate. *See Parker v. Colvin*, 972 F. Supp. 2d 1267, 1274-75 (N.D. Ala. Sept. 23, 2013) (finding that substantial evidence supported the ALJ's decision to not include a limitation for illiteracy in the claimant's RFC).

But even assuming Newton is illiterate as he claims, he has not alleged—much less shown—how the ALJ's failure to find him illiterate is harmful error. The occupations identified by the VE include parts inspector, parts sorter, and final assembler. Tr. 20. These jobs all require a reading level of 1. *See* DICOT 669.687-014, 1991 WL 686074; DICOT 739.687-182, 1991 WL 680217; DICOT 713.687-018, 1991 WL 679271. Reading level 1 requires "[r]ecogniz[ing the] meaning of 2,500 (two-or-three-syllable) words" and reading "at [a] rate of 95-120 words per minute," as well as printing "simple sentences containing subject, verb, and object, and series of numbers, names, and addresses," DOT App. C, 1991 WL 688702 (S.S.A. Jan. 1, 2016). "Courts have found that whether deemed illiterate or of a 'limited education,' claimants with backgrounds like [Newton] can perform unskilled work at Language Level 1." *Joseph D. v. Comm'r, Soc. Sec. Admin*, 2021 WL 9667330, at *25 (N.D. Ga. Mar. 30, 2021) (internal citations omitted).[8] And the Medical Vocational

---

[7] The ALJ found the consultative examiner's opinion "somewhat persuasive" because it was not fully consistent with the record as to Newton's physical impairments.

[8] The claimant in *Joseph D.* completed special education classes through the eighth grade and could "read a little." 2021 WL 9667330, at *24. The court found that, even if the ALJ erred by failing to account for the claimant's illiteracy in his hypothetical to the VE, the error was harmless because "all three jobs cited by the VE are unskilled jobs requiring Language Level 1 skills, the lowest of the six language levels[.]" *Id.* at *25. The court reasoned that claimants with backgrounds similar to the *Joseph D.* claimant could perform those jobs regardless of whether they were deemed illiterate or of a limited education. *Id.*

Guidelines show the same.[9] Thus, even if Newton were illiterate as he claims, he has not shown how any error to impose such a restriction is harmful.

Finally, Newton argues that the ALJ failed to consider his allegations of disrupted sleep, irritability, depression, and anxiety, along with the side effects he experiences with his medications, when formulating his RFC. Pl.'s Br. (Doc. 12) pp. 12-13. Importantly, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, although the ALJ did not specifically mention Newton's testimony about his medication side effects, he did state that he considered all of Newton's symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. Tr. 15. Under these regulations, an ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medications" when evaluating a claimant's testimony about his symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv). Thus, the ALJ's statement that he considered Newton's symptoms under § 404.1529 and SSR 16-3p is sufficient to show that the ALJ considered the side effects of Newton's medications in formulating his RFC. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding that although the ALJ did not specifically mention testimony about medication side effects, the

---

[9] The ALJ applied Medical Vocational Guideline Rule 201.28. Tr. 20. That Rule finds that an individual between the ages of 18-44 who is a high school graduate with nontransferable skills or semi-skills is not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.28. If the ALJ were to have applied Rule 201.25, which limits the same individual to no more than a limited education, the individual would still not be considered disabled. *Id.* at § 201.25. Finally, had the ALJ applied Rule 201.23, which considers the same individual illiterate (or unable to communicate in English) and unskilled or with no transferable skills, the individual would also not be found disabled. *Id.* at § 201.23.

citation to the regulations requiring consideration of those side effects was sufficient to show they were considered when evaluating the claimant's subjective pain testimony); *Nance-Goble v. Saul*, 2021 WL 2401178, at *4-5 (N.D. Ala. June 11, 2021) (finding that the ALJ did not err in failing to specifically discuss the claimant's medication side effects where the ALJ noted that he considered all of the claimant's symptoms based on the requirements of 20 C.F.R. § 404.1529).

Further, to the extent Newton argues that the ALJ should have more thoroughly discussed the side effects of his medications and/or impairment symptoms, Newton has not shown that these side effects/symptoms render him disabled. Newton merely surmises that "[i]t is reasonable to presume that these side effects would disrupt [his] ability to maintain attention and concentration to perform sustained competitive work." Pl.'s Br. (Doc. 12) p. 13. But he points to no evidence in the record showing that these symptoms/side effects are of the nature and extent that would affect his ability to perform work at a sedentary level and thus render him disabled. As such, Newton's conclusory assertions that the ALJ erred by failing to specifically address his medication side effects and impairment symptoms are insufficient to show that the error, if any, is harmful. *Nance-Goble v. Saul*, 2021 WL 2401178, at *4-5 (N.D. Ala. June 11, 2021) (finding that the claimant cited no objective evidence to support her contention that her medication side effects were severe enough to be disabling either alone or in combination with her other impairments).

Accordingly, the undersigned finds that substantial evidence supports the ALJ's consideration of Newton's impairments including his reading ability, medication side

effects, and impairment symptoms. As such, the undersigned finds that the ALJ did not commit reversible legal error.

### 4. Whether the ALJ erred in failing to consider the erosion of the unskilled sedentary occupational base.

Newton argues that the ALJ failed to consider the erosion of the unskilled sedentary occupational base in determining that there were jobs Newton could perform. Pl.'s Br. (Doc. 12) pp. 14-15. The ALJ first determined that, under the Grids, Newton had the RFC to perform sedentary work. Tr. 20. However, because the ALJ limited Newton to "frequently handl[ing], finger[ing], and reach[ing] with [his] upper bilateral extremities," Tr. 14, the ALJ utilized a VE to determine whether these impediments would preclude Newton from performing sedentary work, Tr. 20. The VE testified that given these additional limitations, there were sedentary jobs Newton could perform. Tr. 20, 118. Based on this testimony, the ALJ found Newton was not disabled. Tr. 20.

When limiting a claimant to sedentary work, use of upper extremities is important. *See* SSR 85-15. And "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the sedentary occupational base." SSR 96-9p. Newton claims that his upper extremities' limitations reflect very serious limitations that preclude him from performing work at the sedentary level. Pl.'s Br. (Doc. 12) p. 15. Additionally, Newton contends that he does not have the bilateral manual dexterity to frequently handle, finger, and reach and therefore the ALJ should have further restricted him in those limitations. *Id.*

To the extent Newton argues that the ALJ erred in finding there were sedentary jobs he could perform despite his upper extremities' limitations, his argument fails. The ALJ explicitly provided the upper extremities limitation to the VE, who identified three jobs Newton could perform despite this limitation. Tr. 116-18. As such, the ALJ considered the erosion of the unskilled sedentary occupational base when formulating his questions to the VE and did not commit reversible legal error.

Additionally, to the extent Newton argues that he should have been limited to occasional[10] instead of frequent[11] handling, fingering, and reaching with his upper extremities, substantial evidence supports the ALJ's conclusion. In making this determination, the ALJ noted that at times, Newton "had reduced range of motion in his shoulders, elbows, wrists, and hands, [and] 3-4/5 strength throughout his upper extremities[.]" Tr. 16. But the ALJ also noted that at other times, Newton had "normal coordination, normal range of motion in all extremities, full strength in all extremities, and normal sensation." Tr. 16. This is substantial evidence supporting the ALJ's determination that Newton should be limited to frequent—not occasional—handling, fingering, and reaching.

Of course, Newton points to medical evidence suggesting he was more limited than the ALJ found, including opinions from Dr. Barnes and Dr. Yesil. Pl.'s Br. (Doc. 12) pp. 15. But as previously explained, substantial evidence supports the ALJ's decision to find

---

[10] The Regulations provide that an "occasional" limitation means that Newton could perform these tasks very little up to one-third of the workday. *See* SSR 83-10, 1983 WL 31251, at *5-6 (S.S.A.).

[11] The Regulations provide that a "frequent" limitation means that Newton could perform these tasks one-third to two-thirds of the workday. *See* SSR 83-10, 1983 WL 31251, at *5-6 (S.S.A.).

19

Dr. Barnes's opinion unpersuasive and Dr. Yesil's opinion somewhat persuasive. And the Court declines reweigh the evidence or substitute its own judgment for that of the Commissioner's as to Newton's ability to handle, finger, and reach with his upper extremities.

Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that there were sedentary jobs that Newton could perform despite his upper extremities' limitations and that the ALJ did not err in considering the erosion of the unskilled sedentary occupational base.

## VI. CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible legal error and that substantial evidence supports the Commissioner's decision. Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 16th day of February, 2023.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE